IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **HAMMEL J. CLARK**, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RWT-11-1558 |
| **LT. BELL,** *et al.*, | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

Pending[1] are Defendants Division of Correction, Lt. Bell, Officer Greene, and Officer Kennedy's (the "Correctional Defendants") Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 11, Defendants Correctional Medical Services, Nurse Jeffrey Plasser, and Remi Adelugba's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 17, and Plaintiff's oppositions.[2] ECF Nos. 16, 19. Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. See Local Rule 105.6 (D. Md. 2011).

## Background

Plaintiff alleges that on August 22, 2010, at approximately 10:00 a.m., he went to the medical unit and advised Defendant Remy that he was out of his asthma medication and that he had previously turned in the pump inhaler used to treat his asthma, but had not been issued another one. Compl. ¶ 3. Defendant Plasser looked into the matter and saw that a new pump had been ordered for Plaintiff. Id. Plaintiff alleges that when Plasser returned he advised Plaintiff

---

[1] Also pending is Plaintiff's Motion for Extension of Time to respond to the dispositive motion, ECF No. 13, which is granted nunc pro tunc.

[2] Ms. Taylor has not been properly served with the Complaint. For the reasons that follow, even if properly served, she would be entitled to summary judgment.

that Pharmacy Technician Taylor stated she would not provide the pump or inhaler to Plaintiff because Plaintiff had not asked her for one when he saw her standing there. Id.

Plaintiff states that he returned to his housing unit wheezing and having trouble breathing. Id. ¶ 4. At approximately 10:30 a.m., Plaintiff informed Defendants Greene and Kennedy of the events that transpired in the medical unit. Id. Greene indicated he would contact the medical department but never returned to assist Plaintiff. Id. Kennedy called the medical department but did not reach anyone. Id. ¶ 5. Plaintiff contends that Kennedy was directed by Defendant Lt. Bell not to take Plaintiff back to the medical department. Id. He maintains that at no time did the correctional officers advise the medical department that Plaintiff was suffering an asthma attack. Id. Plaintiff states that during this time he began to have an asthma attack. Id. ¶¶ 6-7. He states that when other inmates saw he was suffering from an asthma attack they provided him their medication. Id. ¶ 6. Plaintiff opines that but for the quick action of his fellow inmates he "might have died." Id. ¶ 7. Plaintiff alleges that over three hours passed before the tier officer permitted his return to the medical unit. Id. He indicates that when he was returning to medical, Defendant Bell stopped him, stated that he faked the asthma attack, threatened him with lock-up, and prevented him from returning to the medical unit. Id. ¶ 8.

Correctional Defendants indicate that on August 22, 2010, Plaintiff advised Officer Kennedy that he needed to go to the medical department to pick up his inhaler. Kennedy contends that he called the medical unit and was advised that the Plaintiff's inhaler had not arrived. ECF No. 11, Ex. A, Attach. 1, ¶ 2. Plaintiff stated to Kennedy that he knew "they [were] playing games with him and he knew how to handle it." Id. Shortly thereafter, Plaintiff

told Kennedy he was having an asthma attack and needed to go to the medical department. Id. He also advised Kennedy he had just used another inmate's inhaler. Id.

Kennedy called the Officer in Charge, Sgt. Greene, who escorted Plaintiff to the medical department. Id. Greene called Lt. Bell, the supervisor of A Building, and advised him that Plaintiff needed to go to the medical department due to an asthma attack. Id., Attach. 3, ¶ 2. Bell maintains that she received the call at approximately 2:20 p.m., ordered Greene to call the medical department to report that Plaintiff was having an asthma attack, and directed Greene to escort Plaintiff to the medical department. Id. ¶ 3. Greene contends that he called the medical department and advised them Plaintiff was having difficulty breathing. Id. Greene was advised by a nurse in the medical department to transport Plaintiff for evaluation. Id.

Greene accompanied Plaintiff, who was in a wheelchair, to the medical department. Id. Lt. Bell met them in the medical department at approximately 2:34 p.m. Id., Attach. 2, 3. Plaintiff stated that he would not have had an asthma attack if he had his inhaler. Id., Attach. 3 ¶ 5. He also stated he used another inmate's inhaler. Id. Plaintiff was examined by medical staff and returned to his housing unit. Correctional Defendants maintain that they did not hinder, interfere, or delay Plaintiff's receipt of medical evaluation or treatment. Id. Attachs. 1-3. Bell further maintains that she did not tell Plaintiff he was faking his asthma attack and did all she could to expedite his escort to the medical department. Id., Attach. 3, ¶6.

Medical Defendants indicate that, among other things, Plaintiff has a history of asthma for which he is prescribed Qvar and Ventolin (albuterol) inhalers as treatment. ECF No. 17, Ex. A. At the time in question Plaintiff's prescriptions were in effect. Medical records demonstrate Plaintiff received a refill of the Qvar and Ventolin inhalers on July 8, 2010. Id. ¶ 3. On August

22, 2010, Plaintiff submitted a sick call slip which indicated he had turned in his "stickers" but had not received the refill of his asthma medications. Id. ¶ 4. He did not indicate he was having difficulty breathing. Id. The sick call slip was received in the medical department on August 24, 2010. Id. It was noted that Plaintiff received a refill of his Ventolin inhaler on August 22, 2010 and a refill of the Qvar inhaler on August 24, 2010.[3] Id. Subsequently, these medications were refilled on or about September 22, 2010. Id.

Defendants Nurses Jeffrey Plasser and Remi Adelugba contend that they do not recall a time when either of them denied medical care to Plaintiff when he was exhibiting signs of a severe asthma attack. They further maintain that if any inmate needed an inhaler that was medically prescribed they would take the necessary steps to ensure the inmate received the inhaler. Id., Exs. A & B.

**Standard of Review**

Summary judgment is governed by Fed. R. Civ. P. 56(a) which provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis omitted). The party seeking summary judgment bears an

---

[3] This was noted on Plaintiff's sick call slip by an unknown medical technician. Plaintiff's Medication Administration Record indicates that Plaintiff received the Ventolin inhaler on August 23, 2010. ECF No. 17, Exs. A & C. The ALJ found Plaintiff received his prescribed medications on August 23, and 25, 2010, and the delay in his receiving them was due to his having failed to timely follow proper procedure for renewal of medications. Id., Ex. A, Attach. 7A.

4

initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met that burden, the non-moving party must come forward and demonstrate that such an issue does, in fact, exist.  *See* Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, *Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility."  Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002) (citation omitted).  The court must, however, also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" Bouchat, 346 F.3d at 526 (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007); see also Smith v. Ozmint, 578 F. 3d 246, 254 (4th Cir. 2009).

**Analysis**

**I.     Sovereign Immunity**

Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of

another state, unless they consent. See Penhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, see MD. CODE ANN., STATE GOV'T § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus, Plaintiff's complaint against the Maryland Division of Corrections, an agency within the State of Maryland, is barred by the Eleventh Amendment.

## II.     Respondeat Superior

Plaintiff's complaint against Correctional Medical Services, Inc. is based solely upon the doctrine of respondeat superior, which does not apply in § 1983 claims. See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (finding no respondeat superior liability under § 1983); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (finding no respondeat superior liability in a Bivens suit). The law in the Fourth Circuit is well established that the doctrine of respondeat superior does not apply in § 1983 claims, even where the defendant is a private corporation, rather than a municipality or other public agency. See Nedd v. Corr. Med. Servs., Civil Action No. JFM-92-1524 (D.Md. Oct. 22, 1992), citing Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982); McIlwain v. Prince William Hosp., 774 F. Supp. 986, 990 (E.D.Va. 1991). Plaintiff's claim against Correctional Medical Services shall be dismissed.

## III.    Medical Claims

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. See Shakka v. Smith, 71 F. 3d 162, 166 (4th Cir. 1995) (Prison officials who are charged with deliberate indifference to a serious medical need must "know of and disregard the objectively serious condition, medical need, or risk of harm"). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. See Farmer, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Va. Beach Corr. Ctr., 58 F. 3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844)). A health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975); Donlan v. Smith, 662 F. Supp. 352, 361 (D. Md. 1986). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." Farmer, 511 U.S. at 844.

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. Brown v. Harris, 240 F.3d 383, 390 (4th Cir. 2000).

In the instant case, Plaintiff complained to tier officers that he needed to have his asthma medication refilled. Defendant Kennedy called the medical department and was advised that Plaintiff's medication was not available. ECF No. 11, Ex. A, Attach. 1, ¶ 2. Sometime thereafter, Plaintiff reported difficulty breathing and indicated he had used another inmate's inhaler. Id. Defendants Greene and Kennedy called their superiors and the medical department, and they received authorization to have Plaintiff transported to the medical unit for evaluation. Id.; id. Attach. 3, ¶ 2. Plaintiff believes that these actions could have happened faster and claims that Correctional Defendants delayed his transport. See Compl. ¶ 7. The parties dispute what happened upon Plaintiff's escort to the medical department. Defendants maintain Plaintiff was evaluated. Plaintiff maintains that when he was transported to the medical unit he did not actually receive an evaluation by the medical department due to the interference of Defendant Bell.[4] For the reasons that follow, this disputed fact is immaterial to a resolution of the pending motions.

Plaintiff cannot establish the subjective component of a deliberate indifference claim. The Fourth Circuit has identified two slightly different aspects of an official's state of mind that must be shown in order to satisfy the subjective component in this context. First, actual knowledge of the risk of harm to the inmate is required. See Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001); see also Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303

---

[4] According to Plaintiff he was evaluated in the medical unit on two occasions on August 22, 2010—when he reported for the first and third pill call of the day. He states that on both of those occasions he reported to the nurses the difficulty he had experienced throughout the day with his asthma. There are no medical records of these interactions. Similarly, there is no medical record to establish that Plaintiff was in fact evaluated after the asthma attack.

(4th Cir. 2004) ("It is not enough that the officers should have recognized it; they must have perceived the risk."). Beyond such knowledge, however, the officer must also have "recognized that his actions were insufficient" to mitigate the risk of harm to the inmate arising from his medical needs. Parrish, 372 F.3d at 303 (emphasis omitted); see also Iko v. Shreve, 535 F. 3d 225, 241 (4th Cir. 2008).

Correctional officers assigned to Plaintiff's housing unit contacted the medical unit and relayed his complaint to medical personnel. They also received authorization to transport him to the medical unit, which they did. These actions were the only actions these Defendants were authorized to take; they are not authorized to deliver medical care. See Shakka, 71 F.3d at 167. To the extent Plaintiff asserts that Defendants Greene and Kennedy delayed his transport to the medical unit there is simply no evidence to support Plaintiff's position, nor is there any evidence to suggest that Defendants Greene and Kennedy recognized that their actions were insufficient to mitigate the risk of harm to Plaintiff.

To the contrary, the record before the Court establishes that upon Plaintiff's inquiry as to his medication Defendant Kennedy contacted medical and was advised that Plaintiff's medication was not available. ECF No. 11, Ex. A, Attach. 1, ¶ 2. Sometime thereafter, when Plaintiff indicated he was having difficulty breathing, Defendants Greene and Kennedy made the necessary calls to receive authorization to have Plaintiff transported for evaluation. Id.; id. Attach. 3, ¶ 2. Before the transport occurred Plaintiff used another inmate's inhaler, thus gaining relief from the asthma attack. Id. Attach. 1, ¶ 2. There is no evidence that any delay between the report of Plaintiff's symptoms and his transport to the medical unit was occasioned by the intentional delay of the provision of medical care or a disregard of a risk to Plaintiff's safety.

That other inmates, themselves asthmatic, perceived the severity of Plaintiff's asthma attack and offered Plaintiff their inhalers does not demonstrate that Defendants Kennedy and Greene drew, or should have drawn, the same conclusion.  Moreover, there is nothing in the record to suggest that any of the Correctional Defendants were aware that Plaintiff was suffering from an asthma attack, which they disregarded.  To the contrary, the record evidence coupled with Plaintiff's own version of events demonstrates that Defendants acted to have Plaintiff evaluated due to his complaints of difficulty breathing. The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference.  Farmer, 511 U.S. at 838.

Further, by Plaintiff's own admission, when he was transported to the medical unit he was no longer suffering from an asthma attack due to his use of another inmate's medication.  See Compl. ¶ 8.  Taking Plaintiff's claim as true regarding Defendant Bell's prohibiting Plaintiff from being seen in the medical unit after his asthma attack, his claim fails as Plaintiff was not then suffering from an objectively serious medical need or risk of harm.  Plaintiff required no treatment at that time.  Additionally, Plaintiff indicates he was seen by medical staff that evening when he reported to the medical unit for pill call.  Id. ¶ 12.  His vitals were normal and he was simply told to rest.  Id.  No medical attention was required as a result of the asthma attack that occurred in the afternoon.  In light of the foregoing, Correctional Defendants' are entitled to summary judgment.

With respect to the Medical Defendants, their conduct also does not establish an actual intent or reckless disregard for Plaintiff's medical need.  The evidence submitted in this case establishes that a prescription was written for medication to treat Plaintiff's asthma.  See ECF

No. 17, Ex. A. Plaintiff was responsible for turning in the sticker from his current prescription in time to receive a refill. Plaintiff indicates that he did so. When Plaintiff reported to sick call in the morning of August 22, 2010 to receive other prescribed medication, he inquired as to the status of the refill of his asthma medication. Id. ¶ 4. There is a dispute as to whether Plaintiff's medication was in the pharmacy at the time. Plaintiff contends that it was there and medical Defendants refused to provide it to him. There is no dispute, however, that Defendants did not perceive Plaintiff to be in any distress at that time. He was not in the medical department in regard to complaints of issues with his asthma or asthma medication. Id. He was in the medical unit because he reports there three times a day to receive other prescribed medication. There is no indication that Plaintiff presented, at that time, with any symptoms of an acute asthma attack.

Plaintiff's claim fails to establish that any of the Medical Defendants acted with a sufficiently culpable state of mind. At best, Plaintiff has made out a case for negligence with regard to the failure of medical personnel to refill his prescription on time. See Henry v. Holliday, 176 F. App'x. 611, 612 (5th Cir. 2006) (finding that failure to refill a prescription for three days does not state a cognizable deliberate indifference claim). No claim arises under §1983 for an act of negligence. Plaintiff's claim for deliberate indifference to a serious medical need is subject to summary judgment and the Medical Defendants' motion for summary judgment will be granted.

**Conclusion**

For the forgoing reasons, Defendants' motions, construed as motions for summary judgment, shall be granted.   A separate Order follows.


Date: <u>March 9, 2012</u>                                         <u>            /s/                        </u>
                                                                            ROGER W. TITUS
                                                                  UNITED STATES DISTRICT JUDGE